The will of Daniel Webster Eastman, who died in the Parish of Jefferson on May 19, 1940, was offered for probate by his widow, Mrs. Ludervine Oesterle Eastman. Daniel E. Eastman, decedent's son, alleging that he was the sole and only heir of his father, attacked the will upon the ground that it did not conform to the requirements of any will recognized by the State of Louisiana and, in the alternative, that the dispositions of the will exceeded the testamentary capacity of decedent in that he encroached upon the legitime of opponent. He prayed for judgment declaring the will to be null and void and, in the alternative, that his share of the succession be increased so as to conform to the laws of Louisiana.
Mrs. Ludervine Oesterle Eastman and opponent's son, Daniel E. Eastman, Jr., were made parties to this proceeding.
In a supplementary petition Daniel E. Eastman alleged that since the opening of his father's succession, Mrs. L.O. Eastman had died and that Anthony and Edward Huffts, children of a former marriage, were her heirs and asked that they be made parties defendant.
The Huffts, thus impleaded, filed exceptions of no cause or right of action which were overruled and apparently no further pleadings were filed in their behalf, for just after the exceptions were overruled, judgment was entered recognizing Daniel E. Eastman as the sole and only heir of his father and, as such, put in possession of the succession. From that judgment Daniel E. Eastman, Jr., and the Huffts have appealed.
The will of the decedent reads as follows:
"Metairie Ridge, "Nov. 19, 1938.
"I, D.W. Eastman, being of sound mind memory but knowing the uncertainty of this life. Do make this my last will testament. After the payment of my just debts I bequeath to my wife Ludervine Oesterle Eastman whom I married September (20-1922) September Twentieth Nineteen Hundred Twenty Two One half (1/2) of my property to my son Daniel E. Eastman one fourth (1/4) of my property to my grand son Daniel Eastman the (3) one fourth of my property (1/4) I may die possessed of. By this I mean real estate. All of my personal property community property I will to my wife Ludervine Oesterle Eastman. My Grand Son Daniel Eastman (3) I wish that his share be put into a trust fund until he becomes 21 years of age. I also will that my wife has the use of our home as long as she lives. I also will that if I die before my wife that she be placed beside me in the same burial plot. I make this bequest to my wife for taking care of my dear mother during her last 3 months of illness without any compensation what so ever. I nominate *Page 790 appoint my wife Ludervine Oesterle Eastman and my life long friend Ernest Riviere to be executors of my last will. And request that they be exempt from giving bond on their surety both as executors and trustees. In testimony whereof I have here unto set my hand in the presence of three (3) witnesses declare this to be my last will this Nineteenth Day of November (19th) — 1938 — one thousand nine hundred and thirty eight.
"(Sgd.) D.W. Eastman.
"On this nineteenth day of November A.D. 1938 Daniel W. Eastman of Metairie Ridge — Parish of Jefferson, Louisiana has signed the foregoing instrument in our presence declaring it to be his will and witnesses there of we three (3) do now, at his request, in his presence, and in the presence of each other, do hereto subscribe our names.
"Witnesses: "(Sgd.) Jno. Bordes "(Sgd.) S. Mathews "(Sgd.) Mrs. Marie Hauler Mathews. "(Sgd.) D.W. Eastman."
The argument of Eastman's counsel is that since it was plainly the intention of the testator to execute a nuncupative will under private signature, as provided in Article 1581 of the Revised Civil Code, and that, since the document does not comply with that article in that there are only three witnesses instead of five, it cannot be considered as valid, whether it conforms to the requirements of any other form of will or not.
Article 1581 of the Revised Civil Code reads as follows:
"A nuncupative testament, under private signature, must be written by the testator himself, or by any other person from his dictation, or even by one of the witnesses, in presence of five witnesses residing in the place where the will is received, or of seven witnesses residing out of that place.
"Or it will suffice, if, in the presence of the same number of witnesses, the testator presents the paper on which he has written his testament or caused it to be written out of their presence, declaring to them that that paper contains his last will."
It is plain that the will of Eastman does not comply with this article and, therefore, cannot be considered as a nuncupative will under private signature, but, say counsel for the proponents of the will, it is good as an olographic will. This type of will is subject to very little formality and is thus described by Article 1588 of the Civil Code:
"The olographic testament is that which is written by the testator himself.
"In order to be valid, it must be entirely written, dated and signed by the hand of the testator. It is subject to no other form, and may be made anywhere, even out of the State."
Opposing counsel replies that even though he was mistaken in his first point to the effect that when one sets out to make a will in a certain form and fails it cannot be considered under any other form, the presence of the signatures of the subscribing witnesses to the Eastman will are alone sufficient to invalidate it.
Taking up these contentions in inverse order, we will consider the effect of subscribing witnesses to an olographic will. It is interesting to note that in the three codes which we have had in Louisiana — that of 1808, 1825 and 1870 — the first code alone made any reference to witnesses to an olographic will.
Article 103 of the Code of 1808, Book 3, tit. 2, c. 6, p. 230, reads as follows:
"The olographic testament, or codicil is that which is made and written by the testator himself, without the presence of anywitness. It may be either open or sealed; but when it is sealed it needs no other superscription than this or words equivalent `this is my olographic will or codicil', * * * which superscription must be signed by the testator." (Italics ours.)
The Project of the Code of 1825 recommended that witnesses be required for the validity of an olographic will as is evidenced by the proposed text and explanatory note by the compilers of the Project, which read as follows:
"The olographic testament is that which is written by the testator himself.
"In order to be valid, it must be entirely written, dated and signed by the hand of the testator, and must have the signature of two witnesses, to whom the testator must have declared that the paper which he offers them to sign is his testament.
"It is subject to no other form, and may be made anywhere even out of the state".
(Note) "It appears to us, as the art of counterfeiting writings has been carried to such an extent, that it is no longer safe to admit as certain a testament, which has *Page 791 
no other proof of its verity than the handwriting of the testator. A testament may be made in one or two lines. Is there not reasonable ground for apprehending that the handwriting may be so well imitated as to deceive those who are best acquainted with it. We have seen persons whose writing has been so well counterfeited that they could not distinguish their own from the counterfeit with a sufficient degree of certainty to be able to affirm which they had written. How much more reason is there to apprehend deception in the handwriting of a man who cannot declare whether the writing be his or not. To be beyond the reach of this danger, we require that the olographic testament should have the signature of two witnesses; and in order that the testator be not bound to reveal to them its contents, we do not oblige him to read it to them."
Louisiana Legal Archives, Vol. 1, Page 214.
However, the Code of 1825, as well as that of 1870, omitted any reference to witnesses, the appropriate article of the present code being almost identical in verbiage with that of the Napoleonic Code. In 1823, during the prevalence of the Code of 1808, our Supreme Court in the case of Heirs of Andrews v. Executors of Andrews, 12 Mart., O.S., 713, maintained the validity of a testament as an olographic will which, at the end of the document, bore the signature of three witnesses, against the contention that such witnesses invalidated it, the court saying:
"The will here is entirely written, signed and dated with the hand of the testator; there is no writing in the body of the testament by any other person. Toullier, Droit Civil Francais, liv. 3, tit. 2, 357. The witnesses sign at the bottom, and their signatures make no part of it".
In 1929 our Supreme Court in the case of Jones et al. v. Kyle,168 La. 728, 123 So. 306, citing the Heirs of Andrews v. Executors of Andrews, supra, held that subscribing witnesses to an olographic will did not affect its validity, and that their signatures are mere surplusage and should be disregarded.
On the second point, to the effect that where a testator intends to write one form of will and fails to comply with the requisite formalities it is not good in any other form, we find that that question was, perhaps, presented to our Supreme Court for the first time in the case of Broutin et al. v. Vassant, 1817, 5 Mart., O.S., 169, where the testatrix attempted to execute a mystic will, but the notary having failed to insert in his act of superscription the statement that the testatrix had declared to him that the will was written by herself or by another at her direction, the court held that the will was invalid as a mystic will, but upheld it as an olographic will. We quote the following from that opinion:
"The question, whether a will which, on account of informality in its execution, is void in the form intended to be used by the testator, can and ought to be supported in another, provided it be clothed with all the requisite formalities, seems, from the authorities produced, to have been agitated in France, before the introduction of the Napoleon code. In its solution, a contrariety is found, both in the determination of courts of justice, and in the opinions of jurists. Under the operation of the code, this question, although raised in several instances, does not appear to have been formally decided.
"Merlin, in his Collection de questions de droit, in the case of a contested will, discusses extensively the question now under consideration — Whether a mystic will, not valid on account of imperfections in the act of superscription, can be valid as an olographic will, when wholly written, dated and subscribed, in the handwriting of the testator? The general maxim, as laid down by Ricard, in his Traite des donations, much relied on by counsel for the plaintiffs, is cited and commented upon by Merlin. It refuses validity to a will, imperfect in the form which the testator adopted for making it, notwithstanding it may be attended with all legal formalities necessary to give it effect in another form. But Ricard's doctrine, says Merlin, is contrary to a general principle, ff. 29, 1, 3, not only for the wills of soldiers, but for those of other persons. It ought not to be presumed that, in choosing one form of making a will, a testator intends so to bind himself to it, that, on the omission of any formality required for the perfection of his will, in such a form, it should remain without effect in any other. Nec credendus est quisquam genus testandi eligere, ad impugnanda judicia sua. According to this principle, which we believe to be sound and rational, when a testament is perfect, in either the forms in which it may lawfully be made, although not complete in the one apparently intended to be used, it ought to be considered as valid and effectual. Ricard *Page 792 
himself, n. 1617, acknowledges that his opinion is founded only in conjectures, with regard to the wishes of the testator, who, it is presumed, had no intention of disposing of his estate in any other form than that which he had chosen, yet, when the contrary is expressed by him, in declaring that his will should have effect, in any other in which it may avail, it is good and valid, if attended with all the formalities required by law for any form of testament."
See, also, Heirs of Andrews v. Executors of Andrews, supra.
Article 1590 of our present code reads as follows:
"It suffices, for the validity of a testament, that it be valid under any one of the forms prescribed by law, however defective it may be in the form under which the testator may have intended to make it."
It follows that the attack upon the validity of the Eastman will is not well founded. We will now consider the alternative position of the opponent to the effect that the testator has encroached upon his legitime as a forced heir.
Article 1493 of the Revised Civil Code reads as follows:
"Donations inter vivos or mortis causa cannot exceed two-thirds of the property of the disposer, if he leaves, at his decease, a legitimate child; one-half, if he leaves two children; and one-third, if he leaves three or a greater number.
"Under the name of children are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent."
Article 1502 of the Revised Civil Code provides:
"Any disposal of property, whether inter vivos or mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that quantum."
Daniel E. Eastman alleges in his petition that he "is the only child of decedent herein, being issue of the marriage between decedent herein and Mrs. Laura Eunice Babin, divorced wife of decedent", however there is no proof of this allegation in the record. The will of the testator makes the following distribution of his property:
"* * * I bequeath to my wife Ludervine Oesterle Eastman whom I married September (20-1922) September Twentieth Nineteen Hundred Twenty Two One half (1/2) of my property to my son Daniel E. Eastman one fourth (1/4) of my property to my grand son Daniel Eastman the (3) one fourth of my property (1/4) I may die possessed of. By this I mean real estate. All of my personal property community property I will to my wife Ludervine Oesterle Eastman. * * * I also will that my wife has the use of our home as long as she lives. * * *"
It thus appears that Daniel E. Eastman is given only one-fourth of the real estate and that a portion of this real estate, namely, the family home, is subject to the usufruct of decedent's wife. If it should be made to appear that the opponent is the sole and only child of decedent as he alleges himself to be, it is plain that under the articles of the Civil Code which we have quoted, he would be entitled to one-third of his father's succession. The testator disposed of more than the law allowed him to, or, in excess of two-thirds of his entire succession. The effect of this provision of the will is not fatal to its validity, but the dispositions must be reduced as stated in Article 1502 of the Revised Civil Code quoted above.
For the reasons assigned, the judgment appealed from is annulled, avoided and reversed, and it is now ordered that this cause be remanded to the Twenty-Fourth Judicial District Court for the Parish of Jefferson in order that the will of Daniel Webster Eastman may be admitted to probate, subject to a revision of its terms, when and if the opponent, Daniel E. Eastman, may establish his claim as the only child of decedent, Daniel Webster Eastman, and for further proceedings according to law and not inconsistent with the views herein expressed.
Reversed and remanded. *Page 793